

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**10/16/2007**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | Case No. 06-35827 |
| **VICKIE BROWN,** | § | |
| **CHRISTOPHER BROWN** | § | **Chapter 7** |
| | § | |
| **Debtors** | § | |

## MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)
[Docket No. 9.]

### I.   Introduction

On October 31, 2006, Vickie and Christopher Brown (the Debtors) filed a Chapter 7 petition, and indicated that the presumption of abuse did not arise. The United States Trustee (UST) filed a motion to dismiss pursuant to 11 U.S.C. § 707(b)(2) arguing that the presumption of abuse does arise because the Debtors are not allowed to claim a vehicle ownership expense under the Local Standards issued by the IRS if they do not have a monthly note or lease payment. The question before the Court is whether the Debtors, in calculating their expenses under the means test, may deduct a vehicle ownership expense despite not actually being obligated on any note or lease for a vehicle. The Court concludes that they may not.

Alternatively, the UST seeks dismissal under § 707(b)(3)(B).[1] The UST argues that three of the Debtors' monthly expenses are unnecessary given the totality of the circumstances of the Debtors' financial situation: (1) $55.00 for a timeshare, (2) $495.00 for "anticipated" car expenses, and (3) $170.00 for tobacco. The Court also concludes that the Debtors may not claim "anticipated" car expenses or tobacco products as expenses.

---

[1] Unless otherwise indicated, all section references contained herein refer to Title 11 of the United State Code. Reference to the Code means reference to the United States Bankruptcy Code.

## II.  Findings of Fact

### A.  *Procedural Findings of Fact*

1.      On October 31, 2006, the Debtors filed a voluntary Chapter 7 petition. [Docket No. 1.]

2.      On January 26, 2007, the UST timely filed its Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) (the Motion to Dismiss). [Docket No. 9.]

3.      On February 13, 2007, the Debtors filed a Response and Objection to UST's Motion to Dismiss.  [Docket No. 11.]

4.      On March 24, 2007, the Debtors filed an Amended Response and Objection to UST's Motion to Dismiss. [Docket No. 21.]

5.      On April 23, 2007, the Debtors and the UST filed a Joint Statement of Stipulated Facts Related to the Motion to Dismiss. [Docket No. 27.]   On this same date, the parties also filed opposing Motions for Summary Judgment. [Docket Nos. 28, 29.]

6.      On April 24, 2007, the Debtors filed their Amended Motion for Partial Summary Judgment. [Docket No. 30.]

7.      On May 3, 2007, the Debtors filed a Response to the UST's Motion for Summary Judgment.  [Docket No. 32.]

8.      On May 21, 2007, the UST filed a Supplemental Statement of Authority.  [Docket No. 35.]

9.      On May 23, 2007, the Debtors filed an Updated Listing of Developing Case Law Opinions to Date.  [Docket No. 36.]

10.     On May 11, 2007, the Court held a hearing on the UST's Motion to Dismiss and the competing Motions for Summary Judgment.

**B.**   *Substantive Findings of Fact*

11.   The Debtors are both employed.  Their annualized current monthly income exceeds the median income in the state of Texas for a two-person household.  [Docket No. 27, ¶¶ 5, 6, 8, 9.]

12.   The Debtors' Schedule I shows an average net monthly income of $4,866.32 [Docket No. 27, ¶ 20], and their Schedule J shows projected monthly expenses of $4,930.00. [Docket No. 27, ¶ 21.]

13.   The Debtors' Schedule J includes three monthly expenses which are challenged by the UST in its Motion to Dismiss: $55.00 per month related to a time share, $495.00 for anticipated car payments and increased insurance, and $170.00 for tobacco products.

14.   The Debtors' total unsecured debt is $156,222.27, of which $40,190.03 is student loans. [Docket No. 27, ¶ 7.]

15.   The Debtors own three motor vehicles: a 1991 Honda Accord with 266,893 miles, a 1988 Honda Accord with 202,467 miles, and a 1986 Ford F-150 Truck with 227,950 miles. [Docket No. 27, ¶ 11.]

16.   The Debtors do not have a lease or loan payment for any of these three vehicles.  [Docket No. 27, ¶ 12.]

17.   The Debtors claimed a monthly operating expense of $820.00 for 2 vehicles: the $420.00 local allowance plus an additional $200.00 per vehicle allowed for vehicles more than 6 years old and/or with more than 75,000 miles.  [Docket No. 27, ¶ 13.]

18.   The Debtors also claimed expense deductions of $793.00 as ownership or lease expenses for two vehicles.  [Docket No. 27, ¶ 14.]

3

19.     The Debtors scheduled their monthly disposable income at $7.42 and indicated that the

presumption of abuse did not arise.  [Docket No. 27, ¶ 15.]

### III.     Venue and Jurisdiction

This Court has jurisdiction over the Motion to Dismiss pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant

to 28 U.S.C. § 1408.

### IV.     Conclusions of Law

**A.     In order to claim the Local Standard for the vehicle ownership expense under 11 U.S.C. § 707(b)(2)(A)(ii), the Debtors must have a pre-petition note or lease payment.**

Section 707(b)(2)(A)(ii) provides that "[t]he debtor's monthly expenses shall be the debtor's

applicable monthly expense amounts specified under the National Standards and Local Standards,

and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses

. . . ."  The parties have differing interpretations of the word "applicable" as used in the statute.  The

UST argues that the Debtors are not entitled to claim the ownership expense for two vehicles since

they do not currently make a lease or loan payment on any vehicles.  The Debtors respond that they

are entitled to claim the ownership expense merely because they own cars free and clear of any liens.

This issue is solely a matter of law.  Both parties stipulated to all of the relevant facts.  The parties

also stipulated that the presumption of abuse will arise if the Court interprets § 707(b)(2)(A) in favor

of the UST.

The issue in the instant case—whether a debtor must have a monthly note or lease payment

in order to claim the vehicle ownership expense—has been addressed by dozens of bankruptcy and

district courts across the country.[2]  The case law is so evenly divided that neither position can fairly be characterized as the majority.[3]  Although the arguments on both sides have been discussed at length in numerous opinions, the Court took this matter under advisement because no bankruptcy court within the Southern District of Texas has published an opinion addressing this issue.

Each party presented extensive case law supporting its respective position.  The UST noted that, while only persuasive and not binding on this Court, every other lower court within the Fifth Circuit to consider this issue has ruled in favor of the UST's position.[4]  Conversely, the Debtors introduced a time line of the case law on this issue to show a recent trend among bankruptcy courts from outside the Fifth Circuit favoring their position.[5]  The Court briefly summarizes the major themes running throughout both lines of cases, and, for the reasons stated below, finds that the Debtors must have an actual monthly loan or lease payment on a vehicle in order to claim the vehicle ownership expense.

1.    **The juxtaposition of "applicable" and "actual" in the statute**

---

[2] While this is a Chapter 7 case, the case law addressing this issue covers both Chapter 7 and 13 cases because § 1325(b)(3) incorporates § 707(b)(2) into the calculation of disposable income.

[3] For a full list of cases on both sides of the issues *see In re Enright*, 2007 Bankr. LEXIS 812, at *6-7 (Bankr. M.D.N.C. March 6, 2007); *see also In re Swan*, 368 B.R. 12, 17 (Bankr. N.D. Cal 2007). In the months since these cases were decided, a least a dozen more opinions have discussed the issue.

[4] The districts to rule in favor of the UST's position include: the Northern District of Texas, *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) and *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006); the Western District of Texas, *In re Oliver*, 2006 WL 2468297 (Bankr. W.D. Tex. 2006); the Eastern District of Louisiana, *In re Devilliers*, 2007 WL 92504 (Bankr. E.D. La. 2007); and the Western District of Louisiana, *In re Ceasar*, 2007 WL 777821 (Bankr. W.D. La. 2007).

[5] One notable exception to this trend is *Fokkena v. Hartwick (In re Hartwick)*, 2007 U.S. Dist. LEXIS 61071, at * 10-12 (D. Minn. Aug. 20, 2007), an appeal to the district court which overturned the bankruptcy court's ruling in the debtor's favor.  *In re Hartwick*, 352 B.R. 867 (Bankr. D. Minn. 2006).

The genesis of the line of case presented by the Debtor is *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006). *Demonica* focuses on Congress' placement of the words "applicable" and "actual" in the same sentence of § 707(b)(2)(A) to describe the IRS standards and the other necessary expenses, respectively. "In order to give effect to every word in the statute, the term 'actual monthly expenses' cannot be interpreted to mean the same thing as 'applicable monthly expenses.'" *Demonica*, 345 B.R. at 902. The debtor in *Demonica* did not have an actual ownership or lease expense. Instead, he was making monthly payments on a motor vehicle owned by his non-debtor wife. The court in *Demonica* approvingly cited *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006) (one of the first cases ruling in favor of the UST's position), but differentiated that case by noting that "[w]hile the Debtor is not obligated under the note, he does incur the expense to use the vehicle. Therefore, the Debtor can claim the Local Standard for transportation ownership/lease expense in addition to the transportation operation expense." *Demonica*, 345 B.R. at 905.

*Demonica* only gets the Debtors half way—a debtor who makes monthly payments for a car titled in another name may claim the applicable vehicle ownership expense. However, the Debtors in the case at bar were not making ownership or lease payments for any vehicles. The holding of *Demonica* was expanded by *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006). In that case, the court concluded that "the debtor is entitled to take a car ownership deduction in the amount set forth in the Local Standards for her ownership of one car, even though she has no car payment." *Id.* at 419. The debtor in *Fowler* argued that "applicable" merely limited the expense to the number of cars owned. The court agreed with the debtor and relied on the same logic as *Demonica*: "[t]he use of 'actual' with respect to Other Necessary Expenses and 'applicable' with respect to the National and

6

Local Standards must mean that Congress intended two different applications." *Id.* at 418 (citations omitted).

This argument was most effectively refuted in *Neary v. Ross-Tousey* (*In re Ross-Tousey*), 368 B.R. 762 (E.D. Wisc. 2007). "[T]hough it is reasonable to conclude that 'actual' and 'applicable' have different meanings, that does not mean that Congress, by using two different adjectives, meant that the two terms must have essentially opposite meanings." *Id.* at 765. This Court approves of the interpretation in *Ross-Tousey*, which allows "applicable" to have two different meanings. First, the ownership expense is only "applicable" if the debtor makes a loan or lease payment on a vehicle. Second, the amount of the ownership deduction is to be determined not by the actual amount of that payment, but rather whatever is the "applicable" amount under the Local Standards. *Id.; see also In re Howell,* 366 B.R. 153, 157 (Bankr. D. Kan. 2007); *Hartwick*, 2007 U.S. Dist. LEXIS 61071, at \*10-12. "This reading gives meaning to the distinction between 'applicable' and 'actual' without taking a further step to conclude that 'applicable' means 'nonexistent' or 'fictional.'" *Ross-Tousey,* 368 B.R. at 765.

### 2. The propriety and effect of considering IRS materials in the interpretation of § 707(b)(2)(A)

The Internal Revenue Manual (IRM), and the Financial Analysis Handbook contained therein, provide a definitive, black-letter answer to the issue—if the debtor does not make any vehicle payments, then he may not deduct the ownership expense. The IRM rule is a major, often decisive, factor in the case law presented by the UST. *Barraza,* 346 B.R. at 728; *Hardacre,* 338 B.R. at 726; *McGuire*, 342 B.R. at 613. The opposing case law circumvents the IRM by holding either that (1) the IRM is purposefully not part of the legislative history and should not be considered at

all;[6] or (2) the IRM rule should not control the interpretation of § 707(b)(2) because the IRM uses the Local Standards as caps on actual payments and Congress used the Local Standards as fixed deductions.[7]

The argument that courts applying the Local Standards should not consult the IRM is premised on the fact that an early version of BAPCPA included a specific reference to "the Internal Revenue Service financial analysis," which includes the IRM and the Financial Analysis Handbook. *Fowler*, 349 B.R. at 419 (citing H.R. 3150, 105th Congress (1998)). This reference does not appear in the final version of BAPCPA. "The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards." *Fowler*, 349 B.R. at 419. In other words, *Fowler* argues that Congress intended to adopt the amounts set forth in the IRS' Local Standards strictly as a set of numerical values devoid of any context.

The Court disagrees, especially in light of the argument, discussed below, that the Code uses the Local Standards as a fixed deduction (i.e., a debtor with a $1 payment may deduct the full amount in the Local Standard) and the IRM uses the Local Standards as a cap (i.e., a taxpayer with a $1 payment only receives a $1 deduction). It would have been impossible to define expenses "as determined under the Internal Revenue Service financial analysis" if the desired analysis was something else completely. Although *Fowler* is correct that Congressional intent can be gleamed

---

[6]*See, e.g., Fowler*, 349 B.R. at 419; *In re Grunert*, 353 B.R. 591, 593 (Bankr. E.D. Wisc. 2006); *In re Prince*, 2006 WL 3501281, at *2-3 (Bankr. M.D.N.C. Nov. 30, 2006); *In re Sawdy*, 362 B.R. 898, 912 (Bankr. E.D. Wis. 2007); *In re Haley*, 354 B.R. 340, 343 (Bankr. D.N.H. 2006);

[7] *See, e.g., In re Hartwick*, 352 B.R. 867, 869 (Bankr. D. Minn. 2006) (overruled by *Fokkena v. Hartwick* (*In re Hartwick*), 2007 US Dist LEXIS 61071, at * 10-12 (D. Minn. Aug. 20, 2007)); *In re Enright*, 2007 Bankr. LEXIS 812, at *14-5; *In re Zaproski*, 366 B.R. 758, 767 (Bankr. E.D. Mich. 2007).

8

from the deletion of language before the enactment of a statute, it is equally important to remember when interpreting a statute that "[c]ontext counts." *Environmental Def. v. Duke Energy Corp.*, 127 S. Ct. 1423, 1433 (2007). Section 707(b)(2) specifically incorporates the Local Standards issued by the IRS.  In order to understand the context of those amounts, it is entirely appropriate to rely upon supporting material issued by the IRS clarifying those amounts. *See In re Slusher*, 359 B.R. 290, 309 (Bankr. D. Nev. 2007) ("To understand what requirements this incorporation imposes would seem to require courts to look at how the IRS defines these categories, and how the IRS calculates those expenses . . . it makes no sense to turn a blind eye to existing administrative interpretations of the very text Congress has specified.").  The IRM leaves no doubt that free and clear ownership is insufficient to claim the vehicle ownership expense.

The second argument—that the IRM and the Code utilize the Local Standards in inconsistent ways—originates with an early article describing BAPCPA's changes to § 707(b).  Hon. Eugene Wedoff, *Means Testing in the New 707(b)*, 79 AM. BANKR. L.J. 231 (2005).  The IRM treats the Local Standards as a cap on the amount of the actual expenditure being made by the individual.  For example, if the Local Standard is $427 and the taxpayer has an actual monthly payment of $500, then the taxpayer may only deduct $427.  However, if the Local Standard is $427 and the taxpayer has an actual monthly payment of $250, then the taxpayer may only deduct $250.

The Local Standards are not applied in the same way under § 707(b)(2).  If that same taxpayer with a $250 monthly car payment filed a bankruptcy petition, as a debtor he would be allowed a deduction for the entire $427 allowed by the Local Standard.  According to the cases which follow Judge Wedoff's theory, there is no discernible reason to disallow the ownership expense to a debtor who has no monthly payment if it is granted to a debtor with a $1 monthly

payment. *Fowler*, 349 B.R. at 418-19.  But why stop there?  If ownership in and of itself is the only

threshold to claiming the ownership expense under § 707(b)(2)(a), then there is no reason that a

debtor need to have an operable vehicle in order to claim this expense.  If a debtor has title to an old,

rusted pile of scrap metal sitting on cinder blocks in his backyard, then should he not also be allowed

an "ownership" expense? Reduced to its most absurd, what is the difference between a debtor with

an inoperable vehicle and a debtor that owns no vehicle at all?  If a debtor files schedules that

anticipate the purchase of a vehicle in the next five years, then, applying the logic of this line of

cases, he should be allowed the full Local Standard ownership expense.  This cannot possibly have

been the intent of Congress.

### 3.     The fair and equitable policy is to allow debtors with older model cars to save money for the inevitability of replacing or repairing a vehicle.

The Debtors' case law also argues that allowing the ownership expense when a debtor owns

his vehicle free and clear reflects the reality that most cars owned free and clear are older models that

have high mileage and will need to be replaced.  Indeed, the Debtors in the case at bar vigorously

emphasized this argument.  The newest of their three cars is 16 years old and the lowest mileage on

any of the three is 202,467.

This argument, like the one discussed above, is also derived from Judge Wedoff's article.

"This approach reflects the reality that a car for which the debtor no longer makes payments may

soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids

arbitrary distinctions between debtors who have only a few car payments left at the time of their

bankruptcy filing and those who finished making their car payments just before the filing." Wedoff,

*supra,* at 257.  A recent case, despite ruling in favor of the debtors, rejected this argument.  *In re*

*Sawdy*, 362 B.R. 898 (Bankr. E.D. Wis. 2007). "During the course of almost any Chapter 13 plan, expenses arise which could be handled if the debtor had a 'slush' fund, or a rainy-day fund. But the Bankruptcy Code is not designed to provide Chapter 13 debtors with slush funds . . . For 'free and clear' debtors to argue that they should be able to deduct the vehicle ownership expense in order to provide for the possibility that they may have new vehicle expenses down the road is really an argument for building into the disposable income requirement . . . an emergency cushion. Nothing in the statutory language provides for such a cushion." *Sawdy*, 362 B.R. at 908.

While the Court agrees with the analysis in *Sawdy*, that court may have overstated its case slightly. Debtors who own vehicles that are either six years old or have over 75,000 miles are allowed an additional $200.00 per month in their vehicle operating expense as a result of this exact policy consideration. *McGuire*, 342 B.R. at 613; *Barraza*, 346 B.R. at 729. Thus, the Code does provide some form of an "emergency cushion" in recognition of the reality of owning an older model vehicle.[8] The existence of this extra allowance undermines the Debtors' argument that § 707(b)(2) should grant debtors who own older model vehicles free and clear a preemptive ownership expense. The Court will not distort a clear statute in order to achieve a result that is already provided for by other parts of the Code.

---

[8] In the Chapter 13 context, if a debtor's vehicle become inoperable, modification of the plan is always an option. *McGuire*, 342 B.R. at 614.

4.     **Conclusion of § 707(b)(2) analysis**

The Court adopts the reasoning of the *McGuire/Barraza* line of cases that holds that a debtor

may not deduct the vehicle ownership expense unless the debtor has a monthly note or lease payment

on a vehicle.  In so doing, the Court expressly rejects the *Demonica/Fowler* line of cases that allows

a debtor who owns a vehicle free and clear of all liens to deduct the ownership expense.  The parties

stipulated that: (1) the presumption of abuse would arise if the Court disallowed the vehicle

ownership expense; and (2) the Debtors do not have special circumstances under § 707(b)(2)(B).

Accordingly, the Court grants the UST's motion to dismiss under § 707(b)(2).

**B.     In the alternative, the UST's Motion to Dismiss under 11 U.S.C. § 707(b)(3) should be granted because the Debtors claimed unnecessary expenses and have sufficient disposable income to fund a Chapter 13 plan.**

Section 707(b)(3) applies "in a case in which the presumption [of abuse] does not arise or

is rebutted." The Court has held above that the presumption does arise and the parties stipulated that

there were no special circumstances present to overcome the presumption. However, should an

appellate court determine that this Court followed to the incorrect line of cases under § 707(b)(2),

the Court holds, in the alternative, that the UST's motion to dismiss under § 707(b)(3) has merit and

should be granted.

The UST filed its § 707(b)(3) motion to dismiss based on the Debtors' inclusion of three

monthly expenses on their Schedule J: (1) $55.00 maintenance fee on a timeshare, (2) $495.00 for

"anticipated" car expenses, and (3) $170.00 for the purchase of tobacco products.  The Court finds

that the last two of these expenses are unnecessary and not allowable. Subtracting these expenses

would leave the Debtors with $601.32 in projected monthly disposable income, which is more than sufficient to support a Chapter 13 plan.[9] [Docket No. 27, ¶ 26.]

First, the Court approves of the $55.00 maintenance fee for the Debtors' timeshare. Other courts have found timeshares to be essentially luxury or vacation items that should not be included in a debtor's budget. *See e.g., In re Hand*, 323 B.R. 14, 19 (Bankr. D.N.H. 2007) ("A vacation timeshare is the quintessential example of an item not reasonably necessary for the support of a debtor."); *In re Charles*, 334 B.R. 207, 222 (Bankr. S.D. Tex. 2005) (describing a time share as a luxury item akin to a pleasure boat). However, the Debtors are not living an otherwise luxurious lifestyle. This timeshare is located at a lake near Houston and not some far-off exotic beach resort. Additionally, the Debtors had scheduled only $80.00 for their entertainment expense. Including this $55 maintenance fee as an entertainment expense would bring that total to $135.00, or $67.50 per Debtor per month. The Court does not find this amount to be excessive.

Second, the Court finds that the $495.00 deduction for "anticipated" car expenses is unnecessary. The Debtors' argument provides another opportunity to differentiate between the analysis of §§ 707(b)(2) and (b)(3). The Court's holding under § 707(b)(2) does not mandate that the Court disallow the expense under § 707(b)(3). When considering whether a case is abusive

---

[9] The UST incorrectly merges the standards for dismissal under §§ 707(b)(2) and (b)(3). It asserts that "just as disposable income more than $167 would trigger the presumption of abuse to arise under the means test, disposable income greater than $167 a month or more should be found a sufficiently significant amount of income for abuse under a § 707(b)(3) 'totality of the circumstances' analysis." Thus, the UST attempts to benefit from what it argues is a presumption under § 707(b)(3), but the Court only reaches § 707(b)(3) "in a case in which the presumption [of abuse] does not arise or is rebutted." Therefore, it makes no sense for the Court to use $167 as a strict threshold amount under § 707(b)(3). Additionally, this Court has previously described § 707(b)(3) as a codification, and clarification, of the pre-BAPCPA standard under § 707(b). *In re Singletary*, 354 B.R. 455, 461-62 (Bankr. S.D. Tex. 2006). Under the pre-BAPCPA analysis, the Court considered "whether the debtor has sufficient disposable income to fund a plan under chapter 13." *In re Hill*, 328 B.R. 490, 495 (Bankr. S.D. Tex. 2005) (citing *In re Koch*, 109 F.3d 1285, 1288 (8th Cir. 1997)). However, this Court's determination of whether a debtor has sufficient disposable income is not confined by a specific mathematical formula; the totality of the circumstances means exactly that. *In re Fergason*, 295 B.R. 96, 98 (Bankr. S.D. Tex. 2003).

under § 707(b)(3), the Court examines the totality of the circumstances and is not bound by the limits of the means test in § 707(b)(2). Thus, it is possible that the Court could find that the means test does not allow a vehicle ownership expense when the Debtors are not making a monthly payment, but could find that, under the totality of the circumstances—including the age and condition of the Debtors' vehicles—it is reasonable for them to deduct their "anticipated" expenses.[10] Unfortunately for these particular Debtors, that is not this Court's ruling; they may not deduct their "anticipated" car expenses in the case at bar. Claiming "anticipated" expenses, no matter how much mileage a car has, runs contrary to the notion of disposable income required by the Code. There is no specific date at which the Debtors can be sure that they will need to replace one or both of their vehicles. If, several months into the plan, the Debtors need to purchase or lease a vehicle, they must file a modified plan to include this new, actual expense. The Debtors essentially are arguing that they should be allowed to save part of their disposable income each month in order to purchase a car at some later date. This is not the function of Chapter 13.

Third, the Court is concerned with the Debtors' expense of $170.00 per month for the purchase of tobacco products. Counsel for the Debtors argued that the Debtors' addiction to smoking was so severe that they could not stop "cold turkey" and would need the assistance of a medical doctor. Furthermore, he asserted that, over the length of a Chapter 13 plan, it is in the best interest of their creditors to allow the Debtors to continue smoking because the cost of cessation programs (discounted by their likelihood of success) would exceed the cost of allowing the Debtors

---

[10] For example, assume that a debtor's lease on his vehicle was set to terminate several months after the petition date. In such a case—unlike the case at bar—there would be a definite time at when that payment would stop and the debtor would have to obtain a new form of transportation. Under such a circumstance, it would be reasonable to schedule "anticipated" car expenses.

14

to continue smoking. This argument is disconcerting, contrived, and wholly disingenuous. What will be the cost to creditors of one of the Debtors developing lung cancer? Regardless of the validity of the underlying economic calculation, it is preposterous to argue that, in light of the overwhelming scientific evidence regarding the dangers of smoking available in the year 2007, the purchase of $170.00 per month of tobacco products is a necessary expense. The Debtors may struggle to quit their habit, but bankruptcy is not designed to coddle debtors. A fresh start comes with a price tag, both financial and psychological: lifestyles must be sacrificed and the comforts of a former life give way to a more Spartan existence. Fortunately for the Debtors, the changes they must make will have a beneficial side effect on their health.[11]

In sum, the Court finds that the Debtors may not claim monthly expenses of $495.00 for "anticipated" car expenses or $170.00 for the purchase of tobacco products. This ruling leaves the Debtors with a projected monthly disposable income of $601.32, an amount which is sufficient to fund a Chapter 13 plan. Accordingly, the Court finds that, under the totality of the circumstances, the granting of relief to the Debtors would be an abuse and the UST's motion to dismiss under § 707(b)(3) should be granted.

---

[11] The Debtors may also take some consolation in the fact that their struggle to quit smoking will be aided by Houston's citywide smoking ban which took effect September 1, 2007. Houston, Tex., Code of Ordinances, Ch. 21, Art. IX, §§ 21-236-21-248 (prohibiting smoking in all public areas and places of employment).

15

## V.  Conclusion

The Court finds that the presumption of abuse arises under § 707(b)(2) and that, therefore,

the UST's Motion to Dismiss should be granted.  Alternatively, even if this Court is incorrect about

the presumption of abuse arising under § 707(b)(2), this Court nevertheless concludes that under the

totality of circumstances, granting Chapter 7 relief to these Debtors would an abuse; and therefore

the UST's Motion to Dismiss should be granted pursuant to § 707(b)(3).  An order dismissing this

Chapter 7 case will be entered on the docket simultaneously with the entry on the docket of this

Memorandum Opinion.


Signed on this 16th day of October, 2007.

                                                                 _____

                                                Jeff Bohm
                                                U.S. Bankruptcy Judge